*In re* MARRIAGE OF KIMBERLY A. WOLFF, Petitioner-Appellant, and RICHARD A. WOLFF, Respondent-Appellee.

Second District    No. 2—04—0384

Opinion filed January 21, 2005.

William J. Stogsdill, Jr., and Anthony Sammarco, both of Law Offices of William J. Stogsdill, Jr., of Wheaton, for appellant.

John P. Houlihan and Patricia A. Fox, both of Beck, Houlihan & Scott, P.C., of Wheaton, for appellee.

JUSTICE KAPALA delivered the opinion of the court:

Petitioner, Kimberly A. Wolff, appeals from an order of the circuit court of Du Page County granting respondent's, Dr. Richard A. Wolff's, amended motion to reconsider the final judgment of dissolution of marriage and its subsequent award of sole custody of the parties' two minor children to respondent following a new trial upon reopened proofs. For the reasons that follow, we affirm.

## FACTS

The parties were divorced on October 25, 2002. On that date, the trial court entered a judgment of dissolution of marriage that, *inter alia*, awarded petitioner sole custody of the minor children, Alexander and Aaron. On November 13, 2002, respondent, acting *pro se*, filed a timely motion to reconsider pursuant to section 2—1203 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1203 (West 2002)) in which he raised issues related to the distribution of marital assets, rehabilitative maintenance, and the award of legal fees to petitioner. Respondent did not raise any issue with respect to custody in this motion to reconsider.

The motion to reconsider came before the trial court for hearing on December 9, 2002. Before taking up the motion to reconsider, the trial court addressed respondent's newly filed motion to enjoin petitioner from moving with the children to Quincy, Illinois, some 300 miles distant from Du Page County. The trial court allowed petitioner's oral motion to dismiss the motion to enjoin, ruling that it lacked authority to restrain petitioner from moving anywhere within the State of Illinois. The trial court then engaged in a colloquy with respondent, who was still *pro se*, in which it expressed reservations

about having granted sole custody to petitioner in the first instance. The trial court said it was "very disappointed" that petitioner now was planning to move away with the children. The trial court pointed out to respondent that his motion to reconsider did not allege that the trial court erred in awarding custody to petitioner as grounds for relief and, therefore, the trial court was powerless to hear that issue. Respondent requested leave to amend the motion to reconsider, and the trial court gave him until December 16, 2002, to file the amended motion. The amendment was not filed within the extension of time granted by the trial court.

Respondent hired counsel who, on December 31, 2002, filed a motion to extend the time for filing the amended motion to reconsider, and, although the record does not indicate whether there was any ruling on the motion to extend, on January 6, 2003, the trial court gave respondent leave to file the amended motion *instanter*. In pertinent part, the amended motion to reconsider alleged that "[s]ince the trial took place newly discovered evidence has surfaced that compels the court to change its decision in granting sole custody to [petitioner]." The newly discovered evidence alleged by respondent was a statement made by petitioner to respondent on November 29, 2002, that she was moving with the boys to Quincy. Respondent requested that the trial court reconsider its judgment or, in the alternative, grant a new trial.

Petitioner brought a written motion pursuant to section 2—619 of the Code (735 ILCS 5/2—619 (West 2002)) to dismiss the amended motion. Petitioner alleged that the trial court lacked jurisdiction to hear the amended motion inasmuch as the original motion did not raise the subject of custody and the amended motion was not filed within the extension given to respondent at the hearing on December 9. Petitioner's theory in her motion to dismiss was that section 2—616(b) of the Code (735 ILCS 5/2—616(b) (West 2002)), allowing amendments of pleadings after the running of the statute of limitations period, applied to respondent's section 2—1203 amended motion to reconsider. In her motion to dismiss, petitioner also attacked the sufficiency of the allegations of newly discovered evidence. Among other things, she challenged the sufficiency of respondent's assertion that he exercised due diligence in discovering the newly discovered evidence. The trial court denied the motion to dismiss. After the denial of the motion to dismiss, petitioner filed an answer to the amended motion to reconsider, in which she raised the same matters she advanced in her motion to dismiss as affirmative defenses to the amended motion to reconsider. On April 14, 2003, the trial court held an evidentiary hearing on respondent's amended motion to reconsider. At this hearing, petitioner admitted that she signed a lease for a

farmhouse in Quincy in July 2002 although she denied that a move to Quincy was anything more than one consideration among many at that time. The trial court granted the motion to reconsider and granted a new trial "on the limited issue of custody, visitation, and child support as it relates to the newly discovered evidence of Mrs. Wolff potentially moving to Quincy with the children." After taking additional evidence on those issues, and incorporating the prior evidence from the original trial and the evidence taken at the hearing on the amended motion to reconsider, the trial court entered an order awarding sole custody to respondent on December 31, 2003. Petitioner filed a timely appeal.

## DISCUSSION

### I. Denial of the Motion to Dismiss the Amended Motion to Reconsider

■ Petitioner first contends that the trial court erred in denying her motion to dismiss the amended motion to reconsider. We affirm the trial court's denial of the motion to dismiss on the ground that petitioner employed a procedural nullity in filing a section 2—619 motion to dismiss respondent's amended section 2—1203 motion. Section 2—619 applies only to the dismissal of pleadings. See 735 ILCS 5/2—619 (West 2002). A section 2—1203 motion to reconsider is not a pleading. See *In re Marriage of Sutherland*, 251 Ill. App. 3d 411, 414 (1993) (motion to reconsider could not be dismissed pursuant to section 2—615 because that section applies only to the dismissal of pleadings). A motion is an application to the court for a ruling or an order in a pending case. *William J. Templeman Co. v. Liberty Mutual Insurance Co.*, 316 Ill. App. 3d 379, 388 (2000). A pleading, in contrast, consists of a party's formal allegations of his claims or defenses. *Templeman*, 316 Ill. App. 3d at 388 (holding that a motion for sanctions is not a pleading). Section 2—603 of the Code (735 ILCS 5/2—603 (West 2002)) defines a pleading as a cause of action, counterclaim, defense, or reply. A motion to reconsider a judgment is none of these. As the amended motion to reconsider could not be dismissed pursuant to section 2—619, we conclude that the trial court did not err in denying the motion to dismiss.

### II. Granting the Amended Motion to Reconsider

Petitioner claims, without citing authority, that the trial court lost jurisdiction over respondent's motion to reconsider when respondent did not file his amended motion within the seven-day extension of time granted at the December 9, 2002, hearing. Petitioner asserts that once jurisdiction was lost, the trial court could consider the amended

motion only if it related back to the original motion within the meaning of section 2—616(b) of the Code (735 ILCS 5/2—616(b) (West 2002)), and because there was no relation back, the trial court abused its discretion in allowing a hearing on the amended motion to reconsider. The "relation-back" doctrine replaces the former requirement that original and amended pleadings state the same cause of action with the rule that the amended pleading must state facts that arise out of the same occurrence or transaction as that pleaded in the original pleading. *Avakian v. Chulengarian*, 328 Ill. App. 3d 147, 154 (2002). Where the trial court's determination of jurisdiction is based solely upon documentary evidence, our standard of review is *de novo*. *Haubner v. Abercrombie & Kent International, Inc.*, 351 Ill. App. 3d 112, 117 (2004).

■ Postponing the question of loss of jurisdiction for the moment, we examine section 2—616(b)'s applicability to a section 2—1203 motion to reconsider. Section 2—616(b) addresses amendments to *pleadings*. "Section 2—616 governs amendments to pleadings filed after the statute of limitations period has expired. *** The purpose of section 2—616(b) is to insure fairness to litigants rather than to unduly enhance the technical considerations of common law pleadings." *Castro v. Bellucci*, 338 Ill. App. 3d 386, 390-91 (2003). Section 2—616(b) provides that a cause of action, cross-claim, or defense set up in an amended pleading is not barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed, and if it appears from the original and amended pleadings that the cause of action asserted, or the defense or cross-claim interposed, in the amended pleading grew out of the same transaction or occurrence set up in the original pleading. A motion to reconsider is neither a cause of action, a cross-claim, nor a defense, and, as discussed above, is not a pleading. Therefore, section 2—616(b) has no applicability to motions brought under section 2—1203. Moreover, section 2—616(b) applies to amendments to pleadings after the running of the statute of limitations period. A statute of limitations was not implicated in respondent's amendment of his motion to reconsider.

■ Notwithstanding this procedural irregularity, petitioner's allegation that the trial court lost jurisdiction over the original motion is erroneous. It is undisputed that respondent filed a motion to reconsider within 30 days of entry of the judgment of dissolution, as required by section 2—1203 of the Code. The trial court did not rule on this motion before allowing respondent to file the amendment on January 6, 2003. Consequently, the motion remained pending, thereby

preserving jurisdiction in the trial court. "If a post-trial motion is filed by one or both of the parties within 30 days of the judgment, the trial court retains jurisdiction over the matter until the disposition of any pending post-trial motion." *In re Marriage of Parello*, 87 Ill. App. 3d 926, 931-32 (1980). Accordingly, we conclude that the trial court did not err in finding that it had jurisdiction to hear the amended motion to reconsider.

"The decision to grant or deny a motion for reconsideration is within the discretion of the circuit court and will not be reversed absent an abuse of that discretion." *In re Marriage of Gowdy*, 352 Ill. App. 3d 301, 307 (2004). "In determining whether the trial court abused its discretion, 'the question is not whether the reviewing court agrees with the trial court, but whether the trial court acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted.' " *Gowdy*, 352 Ill. App. 3d at 307, quoting *In re Marriage of Aud*, 142 Ill. App. 3d 320, 326 (1986).

Petitioner contends that the trial court erroneously granted the amended motion to reconsider because the motion raised evidence that occurred after entry of the judgment of dissolution and that was not in existence at the time of trial. Thus, we are called upon to decide whether "newly discovered evidence" for purposes of a section 2—1203 motion for new trial is limited to evidence that existed at the time of trial, or whether it may include evidence of acts that did not occur until after the trial but which pertain to facts in existence at the time of trial. The parties cite no Illinois or foreign cases to answer this question.

The judgment of dissolution was filed on October 25, 2002. According to the amended motion, on November 29, 2002, for the first time, petitioner related to respondent her intent to move to Quincy. Petitioner maintains that this after-the-fact statement cannot form a proper basis for a motion to reconsider. Respondent counters that it is not the statement, but petitioner's prior intent as evidenced by the statement, that is at issue.

■ To justify setting aside a prior order based on newly discovered evidence, (1) the party seeking to overturn the order must show due diligence in discovering the evidence; (2) the party must also show that he could not have produced the evidence at the first trial by exercising due diligence; (3) the party must demonstrate that the evidence is so conclusive that it would probably change the trial result; (4) the evidence must be material and relate to the issues; and (5) the evidence cannot be merely cumulative or serve the sole purpose of

impeachment. *Gersch v. Kelso-Burnett Co.*, 272 Ill. App. 3d 907, 911 (1995). The threshold issue we must decide is whether petitioner's posttrial statement that she was moving to Quincy with the boys is newly discovered evidence that may be used to prove a fact in existence at the time of trial, namely, her intent to move.

We are aware that the Fourth District of the Appellate Court recently stated that "[t]o present newly discovered evidence, a party must show that the newly discovered evidence existed before the initial hearing but had not yet been discovered or was otherwise unobtainable." *Stringer v. Packaging Corp. of America*, 351 Ill. App. 3d 1135, 1141 (2004). However, in *Stringer*, the issue presented to the court for decision was whether the defendant used due diligence in procuring its manager's affidavit, and the statement of when the evidence needed to be in existence was not necessary to the disposition of the case. Moreover, the court in *Stringer* provided no legal authority or analysis for its pronouncement. We decline to follow *Stringer*. We look instead to the Seventh Circuit's interpretation of Rule 60(b)(2) of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 60(b)(2)) for direction on this issue.

■ Rule 60(b)(2) provides relief from judgments for "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). Rule 60(b)(2) is analogous to Rule 59(b) (Fed. R. Civ. P. 59(b)), and the same criteria apply in evaluating new evidence offered under the two rules. *Peacock v. Board of School Commissioners*, 721 F.2d 210, 212 (7th Cir. 1983). Rule 59(b) and Rule 60(b)(2) are the functional equivalents of our section 2—1203 and section 2—1401 of the Code (735 ILCS 5/2—1401 (West 2002)), respectively. The Seventh Circuit's criteria for granting a Rule 60(b)(2) motion include the following: the evidence was in existence at the time of trial *or pertains to facts in existence at the time of trial*. *United States v. McGaughey*, 977 F.2d 1067, 1075 (7th Cir. 1992); see also *United States v. International Brotherhood of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (considering a claim that a postjudgment plea of guilty was newly discovered evidence); *National Anti-Hunger Coalition v. Executive Committee of the President's Private Sector Survey on Cost Control*, 711 F.2d 1071, 1075 n.3 (D.C. Cir. 1983) (considering task force reports that came into existence after the judgment). We are aware that other foreign jurisdictions hold that evidence sufficient to merit a new trial is evidence that existed at the time of trial, but that, for excusable reasons, the party was unable to produce at the time. See *Benson v. Richardson*, 537 N.W.2d 748, 762 (Iowa 1995); *Wal-Mart Stores, Inc. v. Pitts*, 900 So. 2d 1240, 1245 (Ala. Civ. App. 2004) (" ' "Newly

discovered evidence" means evidence in existence at the time of trial of which the movant was unaware' [Citation.]").

We believe that the federal rule is preferable. It more completely allows courts to ensure the correctness and fairness of judgments. However, there are limitations on the use of the rule we adopt today. The newly discovered evidence must pertain to "facts" that were in existence at the time of trial, not to opinions, estimates, evaluations, or predictions. Thus, for instance, an opinion rendered at trial on the amount of damages suffered by a plaintiff, which in reality proves to be wrong after trial, would not justify the defendant in moving for a new trial on newly discovered evidence. In cases dealing with opinions, estimates, evaluations, or predictions, the parties know that the fact finder is not determining a historical truth but is making an estimate, or a prediction of future events. See *Fowler-Propst v. Dattilo*, 111 N.M. 573, 576, 807 P.2d 757, 760 (N.M. App. 1991).

Consequently, we reject petitioner's argument that her statement could not be considered newly discovered evidence because it was not in existence at the time of trial. Accordingly, the trial court did not abuse its discretion in granting the amended motion to reconsider on this ground.

■ Petitioner's next contention is that the trial court abused its discretion in granting the amended motion to reconsider in that respondent did not prove that he exercised due diligence in discovering petitioner's intent to move to Quincy. Petitioner specifically states that respondent, in conducting pretrial discovery and at trial, never asked petitioner whether she intended to move to Quincy. Respondent admits that this precise question was not asked. However, respondent testified that in three hours of pretrial proceedings, petitioner "adamantly denied any attempt [sic] to move anywhere." Respondent recalled that petitioner stated at her pretrial deposition that she intended to be the stable parent and stay in the marital house. Respondent further testified at the hearing on the amended motion to reconsider that petitioner's attorney represented at trial that petitioner was not sincere about moving when she left respondent voice mails to that effect but, rather, was using the threat to sell the marital home as a ploy to make respondent pay her money to fix up the house. At the hearing on the amended motion to reconsider, when asked whether petitioner ever indicated before trial and judgment that she was moving to Quincy, respondent replied, "Not to Quincy. Not anywhere."

Petitioner never directly disputed any of these assertions. She testified only that she did not have the intent to move to Quincy at the time of trial. She testified that she visited her parents in Iowa,

only a few miles from Quincy, on Thanksgiving 2002 and, after looking at the classifieds, she visited several properties in Quincy. She explained that she signed the lease for the farmhouse in Quincy a month before trial, thinking she might use the property as an investment.

The state of the record on what transpired in pretrial discovery and at trial is less than ideal. For instance, we do not have the transcript, or even a portion thereof, of petitioner's pretrial deposition. Nor do we have the portions of the trial transcript that are relevant to the issue of whether petitioner contemplated a move. However, we are able to glean from the record that during the pretrial proceeding in this case (1) respondent inquired of petitioner regarding her intent to move, and (2) petitioner kept secret her intent to move to Quincy. We believe that respondent's general inquiries about petitioner's intent to move satisfied the due diligence requirement. The first time petitioner ever mentioned to respondent her plan to move to Quincy was in the postjudgment conversation in which she revealed it. In view of the representations made by petitioner prior to trial and at trial, respondent would have had no reason to ask petitioner specifically if she planned to move to Quincy. Petitioner admitted that the only place she ever mentioned to respondent as a possible alternative residence was West Chicago, which is in Du Page County.

In the context of a section 2—1401 petition, our supreme court stated in *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273, 284-85 (1982), that to set aside a judgment based upon newly discovered evidence, ordinary diligence in pretrial discovery is that which is reasonably calculated to elicit information important to a litigant's case. For purposes of pretrial discovery, we take "ordinary" diligence to be synonymous with "due" diligence, and we equate the due diligence requirement in section 2—1401 with the due diligence requirement in section 2—1203. In *Ostendorf*, our supreme court held that a litigant exercises ordinary diligence when he poses interrogatories reasonably designed to elicit information. *Ostendorf*, 89 Ill. 2d at 284-85. The court stated:

"If his opponent then suppresses information within the scope of the interrogatories in such a way as to prevent the inquirer from realizing what has occurred, the failure to discover the information is the result of the former's fault, not of the latter's negligence." *Ostendorf*, 89 Ill. 2d at 285.

We believe the case at bar is analogous to *Ostendorf*. During a pretrial proceeding, respondent delved into petitioner's intent either to move or to stay in the house. At that proceeding, petitioner denied

that she intended to move. The evidence at the hearing on the amended motion to reconsider showed that petitioner signed a lease on a farmhouse in Quincy approximately a month before trial. Yet at trial she allowed her counsel to represent that she intended to stay in the house in Du Page County with the children. Based upon the evidence, we cannot say that the trial court abused its discretion in finding that respondent exercised due diligence.

### III. Award of Custody to Respondent

After hearing evidence on reopened proofs and incorporating all the prior evidence, the trial court found that petitioner formed the intent to move to Quincy as early as July 2002, when she leased the farmhouse in that city. The trial court also found that petitioner's testimony was "replete with inconsistencies, half formed reasons, and not persuasive." The trial court further concluded that petitioner was either unconcerned about the best interests of her children or that she intentionally planned the move to frustrate the relationship of her children with respondent.

■ The trial court should consider all relevant factors, including those listed in section 602 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/602 (West 2002)), when making child custody determinations and decide what custodial order serves the child's best interest. *In re Marriage of Spent*, 342 Ill. App. 3d 643, 652 (2003). "A custody determination inevitably rests on the parties' temperaments, personalities, and capabilities, and the witnesses' demeanor." *Spent*, 342 Ill. App. 3d at 652. "Because the trial court is in a far better position to 'observe the temperaments and personalities of the parties and assess the credibility of the witnesses,' the reviewing court affords great deference to the trial court's best interest findings." *Spent*, 342 Ill. App. 3d at 652, quoting *In re Marriage of Stopher*, 328 Ill. App. 3d 1037, 1041 (2002). The trial court's factual findings will not be disturbed unless they are against the manifest weight of the evidence (see *Spent*, 342 Ill. App. 3d at 652).

Petitioner posits that there is no rule of law supporting the proposition that the intentions of a party to a lawsuit can be used to vacate or modify a judgment, except in cases of fraud or unconscionability as proven pursuant to section 2—1401 of the Code. Section 2—1401 allows relief from judgments after 30 days from their entry. As we held above, respondent's motion to reconsider was filed within 30 days of the judgment and his amended motion was timely. Therefore, we fail to see how section 2—1401 governs this case, and petitioner does not further enlighten us.

Petitioner next contends that disturbing custody as a result of a

motion to reconsider evades the strictures of section 610 of the Act (750 ILCS 5/610 (West 2002)), which provides that, unless by stipulation of the parties, no motion to modify a custody judgment may be made earlier than two years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral, or emotional health. Petitioner did not raise this issue in the trial court and has waived it on appeal. *Bonner v. City of Chicago*, 334 Ill. App. 3d 481, 487 (2002). Waiver aside, we reject this argument. In *In re Marriage of Stuart*, 141 Ill. App. 3d 314, 316 (1986), the appellate court considered this argument and held:

> "[Section 610 of the Act] pertains only in the case of the exercise of a court's extraordinary continuing jurisdiction to modify a final custody order when, due to changed circumstances, the childrens' best interests require modification. [Citation.] Nothing in section 610 restricts the power of the court to vacate or revise a final judgment upon a timely post-trial motion of a party, pursuant to section 2—1203 of the Code ***."

See also *Klitzing v. Gottemoller*, 76 Ill. App. 3d 783, 786 (1979). Accordingly, we hold that section 610 of the Act was not implicated by respondent's amended motion to reconsider.

Petitioner next maintains that the trial court abused its discretion when it allowed evidence at the hearing on the reopened proofs on the issues of custody, visitation, and child support that was "not even remotely related to the potential move to Quincy." Petitioner does not set forth the objectionable evidence about which she complains. Therefore, we have no basis to review this claim and find that it is waived for lack of argument. "Bare contentions without argument or citation of authority do not merit consideration on appeal." *Spirit of Excellence, Ltd. v. Intercargo Insurance Co.*, 334 Ill. App. 3d 136, 153 (2002).

Petitioner's penultimate contention is that respondent failed to prove that she had the intent to move to Quincy. Petitioner overlooks the fact that the trial court incorporated the evidence adduced at the first trial and at the hearing on respondent's section 2—1203 amended motion to reconsider into the evidence presented at the trial on the reopened proofs. The trial court found, based upon all the evidence, that as early as July 2002 petitioner intended to move to Quincy with the children if she were awarded sole custody. The evidence showed that in May 2002 petitioner viewed the farmhouse she eventually leased. In July 2002 the property became available and was offered to her. She signed a two-year lease on July 8, 2002. Petitioner researched the Quincy schools her children would attend. In November 2002 she

placed a for-sale sign on the marital residence, but she took the house off the market as soon as respondent brought the issue before the trial court. The trial court found that there was no reason to take the house off the market if petitioner planned to move anywhere but Quincy. The trial court's factual findings are not against the manifest weight of the evidence. Petitioner's denials of her true intent smacked of prevarication. She testified that she viewed various properties in Quincy on Thanksgiving Day 2002 only after glancing through the classifieds at her parents' home in Iowa. She made it seem that she was looking at these properties in a casual, spur-of-the-moment fashion, just for something to do. Yet she did not explain why she was looking when she had already signed a two-year lease. Her explanations for signing the lease were unconvincing. At the April 14, 2003, hearing she testified that the purpose of leasing the farmhouse was to provide a financially stable position for the boys. Yet, at the hearing on the reopened proofs on December 16, 2003, petitioner denied that this was her reason for renting the house. She explained that the Quincy farmhouse represented a great investment opportunity. However, the trial court found this assertion to be preposterous, as the marital estate was all debt and petitioner failed to show how she could afford an investment property.

Petitioner's last contention is that respondent's failure to reply to the affirmative defenses raised in petitioner's response to the amended motion to reconsider results in those matters being deemed admitted. Petitioner waived this issue by not bringing it to the trial court's attention. The record demonstrates that petitioner fully litigated the issues contained in the affirmative defenses. Litigating the issues raised by an affirmative defense waives any objection to the failure to file a reply. *State Farm Mutual Automobile Insurance Co. v. Haskins*, 215 Ill. App. 3d 242, 246 (1991). Failure to raise the lack of a reply to affirmative defenses in the trial court also results in waiver of that issue on appeal. *Andrews v. Cramer*, 256 Ill. App. 3d 766, 769 (1993).

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

O'MALLEY, P.J., and GILLERAN JOHNSON, J., concur.